UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A PINEDA,<br>Plaintiff,<br>v.<br>NANCY BERRYHILL,<br>Defendant. | Case No. 18-cv-02901-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 13-14 |

In July 2014, Plaintiff Richard Pineda filed an application for disability insurance benefits. *See* AR 207 (application). His application was initially denied in November 2014, *see* AR 124 (notice of disapproved claims), and then upon reconsideration in July 2015. *See* AR 130 (notice of reconsideration). Mr. Pineda then requested a hearing before an administrative law judge ("ALJ"). *See* AR 136 (request for hearing). A hearing was held before ALJ Elizabeth Stevens Bentley in January 2017. *See* AR 39-70 (hearing transcript). Subsequently, in February 2017, ALJ Bentley issued her decision, concluding that Mr. Pineda was not disabled from March 25, 2014 (the alleged amended onset date) through the date of her decision. *See* AR 33 (ALJ decision). Mr. Pineda asked that the Appeals Council for the Social Security Administration review the ALJ's decision, *see* AR 205 (letter), but that request was denied, thus leaving the ALJ's decision as the final decision of the agency. *See* AR 1 (notice of Appeals Council action). Mr. Pineda then initiated the instant action, challenging the ALJ's decision.

Mr. Pineda exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction to review pursuant to 42 U.S.C. § 405(g). Mr. Pineda has moved for summary judgment, seeking a reversal of the Commissioner's. The Commissioner has cross-

moved for summary judgment. Having considered the parties' briefs and accompanying submissions, including but not limited to the administrative record, and good cause appearing therefor, the Court hereby **DENIES** Mr. Pineda's motion for summary judgment and **GRANTS** the Commissioner's cross-motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

When Mr. Pineda applied for benefits, he claimed that he suffered from, *inter alia*, hypertension, diabetes, chronic obstructive pulmonary disease ("COPD"), angina, chest pain, and shortness of breath. *See* AR 124 (notice of disapproved claims). As noted above, ALJ Bentley rejected Mr. Pineda's claims for benefits, applying the five-step sequential evaluation process provided for by the relevant regulations.

> "Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits."

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

*See also* AR 65 (hearing transcript) (ALJ posing hypothetical to vocational expert, with the hypothetical including the restriction that the individual "must avoid all exposure to fumes, odors, dusts, gases, and other pulmonary irritants").

In the instant case, the ALJ made the following rulings regarding the five steps.

At step one, the ALJ found that Mr. Pineda had not engaged in substantial gainful activity from March 25, 2014 (the alleged amended onset date) through June 30, 2015 (his date last insured). *See* AR 29 (ALJ decision).

At step two, the ALJ determined that Mr. Pineda had the following severe impairments: COPD and ischemic heart disease. *See* AR 29.

At step three, the ALJ concluded that Mr. Pineda did not have an impairment or combination of impairments that met or medically equaled the severity of the one of the listed impairments in the regulations. *See* AR 29.

At step four, the ALJ first noted that Mr. Pineda "had the residual functional capacity to perform light work," except that he "can occasionally climb ramps and stairs" and can "never climb ladders, ropes or scaffolds." AR 30. The ALJ added that Mr. Pineda "has unlimited ability to balance and stoop" and "can frequently kneel and crouch, and occasionally crawl." AR 30. Finally, the ALJ stated that Mr. Pineda "must avoid concentrated exposure to extreme cold, heat or workplace hazards, and must not be exposed to fumes, odors, dusts, gases, or poor ventilation." AR 30. Based on this residual functional capacity or "RFC," the ALJ determined that Mr. Pineda could not "perform any past relevant work," more specifically, as a welder. AR 32.

Finally, at step five, the ALJ concluded that, based on the RFC, "there were jobs that existed in significant numbers in the national economy that [Mr. Pineda] could have performed" – namely, cashier, fast food worker, and housekeeper. AR 32-33. The ALJ therefore concluded that Mr. Pineda was not disabled from the alleged amended onset date through the date last insured. *See* AR 33.

## II.   **DISCUSSION**

After a final decision on a claim for benefits by the Commissioner, the claimant may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."). Substantial evidence is relevant evidence – "more than a scintilla, but less than a preponderance" – that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). A court evaluates "the record as a whole, . . . weighing both the evidence that supports and detracts from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports "more

than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

In the instant case, Mr. Pineda makes only one argument. More specifically, he contends that, based on the ALJ's findings on his RFC, he could not have performed any of the jobs the ALJ identified at step five, *i.e.*, cashier, fast food worker, and housekeeper. Mr. Pineda notes that, in discussing his RFC, the ALJ stated that he "must avoid concentrated exposure to extreme cold, heat or workplace hazards, and must not be exposed to fumes, odors, dusts, gases, or poor ventilation." AR 30. According to Mr. Pineda, this meant that he could not have *any* exposure to *any* fumes, odors, dusts, and so forth. Mr. Pineda notes that the ALJ could have used "concentrated" or "extreme," as she did with exposure to cold, heat, or workplace hazards, but she did not. *See* Reply at 1 (noting that "[t]here were no qualifiers"). Mr. Pineda also takes note that, at the hearing, the ALJ asked the vocational expert to consider a hypothetical where an individual must, *inter alia*, "avoid *all* exposure to fumes, odors, dusts, gases, and other pulmonary irritants." AR 65 (hearing transcript) (emphasis added). And, according to Mr. Pineda, because he could not have *any* exposure to *any* fumes, odors, dusts, and so forth, there is no possibility that he could have performed any of the jobs identified by the ALJ, *i.e.*, cashier, fast food worker, and housekeeper. Mr. Pineda emphasizes that, per SSR 85-15:

> Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.
>
> *[But] [w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.*

SSR 85-15 (emphasis added).[1]

As an initial matter, the Court notes that, arguably, the ALJ did not intend such a restrictive

---

[1] The Court notes that, in his opening brief, Mr. Pineda made a slightly different argument. *See* Mot. at 2 (criticizing the ALJ for "never actually ask[ing] the VE [vocational expert] if the testimony was consistent with the DOT [Dictionary of Occupational Titles]"; adding that "[t]his was not harmless error" because "[t]he jobs identified by the VE and relied upon the ALJ were inconsistent with the ALJ's most restrictive limitations and were inconsistent with Agency rules related to environmental limitations.").

4

RFC. Such a restrictive RFC – no exposure of any kind to any fumes, odors, dusts, and so forth – seems inconsistent with the bulk of the medical evidence of record as described in the ALJ's decision. *See, e.g.*, AR 427 (report of Dr. Cayton from April 2013) (discussing pulmonary function study that was conducted on Mr. Pineda; acknowledging that "[m]echanics reveal reduction in FEV1 and forced vital capacity" but also noting that lung volume, diffusing capacity, and airway resistant were normal and there was only "mild small airway obstruction"); AR 388 (report of Dr. Cayton from March 2014) (discussing pulmonary function study that was conducted on Mr. Pineda; again acknowledging "reduced" forced vital capacity and FEV1 but adding that total lung capacity, diffusing capacity, and airway resistance were normal); AR 773, 777 (report of Dr. Levy from February 2015) (stating that "[c]urrent pulmonary function tests mild COPD/CRPD" and "[p]atient achieved 8 METs"; also stating that "[h]is current pulmonary function tests do not suggest any major impairment"); AR 523 (record of St. Mary's Medical Center, Pulmonary Function Lab, from October 2015) (stating that "[t]here is mild obstruction to airflow which may reflect variable effort," that "[p]eak flow improves with inhaled bronchodilator," that "FEV1 is 72% predicted," and that "[t]here is good response to inhaled bronchodilator"); AR 692 (record of Dr. Mitchell from October 2016) (noting that "[t]here is no wheezing," "[c]hest is clear to auscultation," and "[t]here are no rales or rhonchi noted").

Nevertheless, even assuming a restrictive RFC – in Mr. Pineda's favor – the Court still concludes that the Commissioner, and not Mr. Pineda is entitled to summary judgment.

Mr. Pineda's argument is predicated on the assertion that the jobs of cashier, fast food worker, and housekeeper all involve some level of exposure to fumes, odors, dusts, and so forth. However, the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") do not describe any of those jobs as involving such exposure. *See* 1991 WL 671840 (DOT 211.462.010 cashier); 1991 WL 672682 (DOT 311.472-010 fast-foods worker); 1991 WL 672783 (DOT 323.687-014 cleaner, housekeeper).[2] In fact, for each of those jobs, the category "atmospheric conditions" –

---

[2] In his opening brief, Mr. Pineda incorrectly cited to DOT 323.687-010 cleaner, hospital (available at 1991 WL 672782). *See* Reply at 1 (acknowledging incorrect citation but arguing that

5

which is described in the SCO as "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin," SCO Appendix D at D-2 – is followed by the statement "Not Present – Activity or condition does not exist." 1991 WL 671840 (DOT 211.462.010 cashier); 1991 WL 672682 (DOT 311.472-010 fast-foods worker); 1991 WL 672783 (DOT 323.687-014 cleaner, housekeeper).

Mr. Pineda protests that it defies reality to say that these jobs do not involve any exposure to fumes, odors, dusts, and so forth. He points out that, in a document available on the Social Security Administration ("SSA") website, there is the following text:

> Another gap in the coding of jobs in the DOT is that it is left to the judgment of the Disability Examiner (many of whom today are very inexperienced and all of whom are overworked) to realize a job could involve exposure to a non-exertional factor such as an environmental condition that is coded as 'not present' in the SCO. An example is the job of Yarn Winder (681.685-154). This type of work can expose the worker to excessive flying particles (lint, dust particles, etc.) but coding in the SCO under 'Environmental Condition Factors' indicates 'Atmospheric Conditions' are 'not present.'
>
> When they devised the SCO, the Department of Labor rated non-exertional factors only when the "activities are critical, i.e., when their presence is more than routine in amount," or "when present to a considerable degree." However, it would be inappropriate to deny a claimant back to the job of a yarn winder if s(he) has a severe respiratory impairment on the basis that 'Atmospheric Conditions' were coded in the SCO as 'not present.' The same holds true for the claimant with a severe respiratory impairment whose past work was that of Cleaner, Housekeeping (323.6887-014) or Cleaner, Hospital (323.687-010). Neither job is coded in the SCO as involving exposure to 'Atmospheric Conditions.' While exposure to fumes/odors from industrial chemicals used in the cleaning process may not be detrimental to the *unimpaired* worker, an individual whose respiratory ability is already compromised would be at further risk if consistently exposed to such irritants.

Occupational Information Development Advisory Panel ("OIDAP"), *Content Model and Classification Recommendations for the Social Security Information System, Report to the Commissioner of Social Security* (hereinafter "OIDAP Report"), September 2009, *available at* https://www.ssa.gov/oidap/panel_documents.htm (Appendix F, Sub-Appendix A-106) (last visited

---

the error does not affect the analysis).

6

December 6, 2018).

As a preliminary matter, the Court notes that the document containing the above language – although posted on the SSA website – was not authored by the SSA, nor even the OIDAP (a discretionary panel established by the Commissioner "to provide advice 'on creating an occupational system tailored specifically for SSA's disability programs'"). OIDAP Report at 5, *available at* https://www.ssa.gov/oidap/Documents/FinalReportRecommendations.pdf (last visited December 6, 2018). Rather, the language above was contained in a comment submitted to an OIDAP subcommittee by the National Association of Disability Examiners ("NADE"). Furthermore, it appears that the criticism made by NADE – notably, many years ago in September 2009 – never resulted in any change in the SSA's approach toward or use of the DOT and SCO.

Nevertheless, even if the Court were to credit the NADE criticism, Mr. Pineda would not fare any better because, at best, the criticism puts into question whether Mr. Pineda could – with the restrictive RFC – perform the job of housekeeper. While it seems likely that a housekeeper would use cleaners, and it is even likely that the cleaners would produce some odors or fumes,[3] it is far more speculative to say that a fast-foods worker or cashier would be exposed to fumes, odors, dusts, and so forth.

Contrary to what Mr. Pineda claims, the DOT does not state that a fast-foods worker does cleaning. Rather, the DOT states that one of the responsibilities of a fast-foods worker is to "maintain orderly eating or serving areas." 1991 WL 672682 (DOT 311.472-010 fast-foods worker). Nor it is otherwise obvious that a fast-foods worker necessarily or typically does cleaning. Mr. Pineda argues still that a fast-foods worker would be exposed to odors or fumes from "possibly working the deep fryer." Reply at 3; *see also* 1991 WL 672682 (DOT 311.472-010 fast-foods worker) (stating that "[m]ay cook or apportion french fries or perform other minor duties to prepare food, server customers, or maintain orderly eating or serving areas"). But presumably the ALJ's RFC was not so restrictive as to cover *all* odors; at the very least, it seems implausible that the RFC would cover odors emanating from food. *Cf.* SCO, Appendix D at D-2

---

[3] It also seems likely that a housekeeper would be exposed to dust.

7

(defining "atmospheric conditions" as "[e]xposure to such conditions as fumes, *noxious* odors, dusts, mists, gases, and poor ventilation, *that affect the respiratory system, eyes, or the skin*") (emphasis added).

Furthermore, even if Mr. Pineda were correct that he could not, with the ALJ's RFC determination, perform the job of a fast-foods worker, that still leaves the job of cashier. Mr. Pineda asserts that some cashiers – *e.g.*, those working in parking lots and toll booths – are clearly exposed to odors and fumes. *See* Mot. at 6. But the vocational expert noted at the hearing before the ALJ that such cashiers only "represent[] about 10 percent of all the cashiering jobs." AR 68 (hearing transcript); *see also* AR 33 (ALJ decision) (noting that there are 850,000 cashier jobs nationally). This would still leave a large number of cashier positions that Mr. Pineda could perform. Mr. Pineda protests that cashiers have contact with the public and thus might be exposed to, *e.g.*, "strong perfumes or body sprays." Reply at 3. But, as indicated above, this becomes a matter of speculation and, in any event, if the evidence supports "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 680-81.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supported the ALJ's step five analysis. The Court accordingly denies Mr. Pineda's motion for summary judgment and grants the Commissioner's.

The Clerk of the Court is instructed to enter a final judgment in accordance with the above and close the file in the case.

This order disposes of Docket Nos. 13 and 14.

**IT IS SO ORDERED**.

Dated: January 2, 2019

_____
EDWARD M. CHEN
United States District Judge

8